UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RICKIE ROMINE,** | } |
| | } |
|    **Plaintiff,** | } |
| | } |
| **v.** | }   Case No.:  5:11-CV-00425-MHH |
| | } |
| **UNUM LIFE INSURANCE** | } |
| **COMPANY OF AMERICA,** | } |
| | } |
|    **Defendant.** | } |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Rickie Romine is insured under a group disability insurance plan offered through the company where he worked until he became disabled. Defendant Unum Life Insurance Company issued the policy that funds the plan and makes benefits decisions under the policy.  In this ERISA action, Mr. Romine contends that Unum wrongfully reduced his monthly long-term disability benefit.[1]

The parties have filed cross motions for summary judgment (Docs. 15, 21). Having considered the parties' pleadings, memoranda, and evidentiary submissions, the Court denies Unum's motion for summary judgment because the policy provisions that govern the calculation of Mr. Romine's disability benefit are ambiguous.  The Court resolves the ambiguity in favor of Mr. Romine.  The Court

---

[1] ERISA stands for the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

also denies Mr. Romine's motion for summary judgment because the benefit calculation that Mr. Romine proposes is incorrect under the terms of the policy.

## I. FACTUAL BACKGROUND

Before he retired, Mr. Romine worked for Cavalier Homes, Inc. as the Vice President in charge of purchasing. (Doc. 14, ¶ 3). Cavalier had an employee benefit plan which provided long-term disability benefits to the officers of the company through a policy with Unum Life Insurance Company. (*Id.* ¶ 4). Mr. Romine began receiving benefits under the policy after he was forced to stop working because of blindness. (*Id.* ¶ 3). His claims against Unum in this lawsuit concern the method that Unum used to calculate his monthly disability benefit.

### A. The Plan

The "MONTHLY BENEFIT" provision in Unum's policy describes the method for calculating an insured's monthly disability benefit. (Doc. 17-2, pp. 162–68). That provision states, in relevant part:

MONTHLY BENEFIT

To figure the amount of monthly benefit:

1. Take the lesser of:

    a.  60% of the insured's basic monthly earnings; or

    b.  the amount of the maximum monthly benefit shown in the policy specifications; and

2. Deduct other income benefits, shown below, from this amount.

(*Id.* at 162). The maximum monthly benefit is $5,000.00. (*Id.* at 153). The plan defines "other income benefits" as follows:

OTHER INCOME BENEFITS

Other income benefits means those benefits as follows.

…

5.  The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or The Quebec Pension Plan, or any similar plan or act, as follows:

    a.  Disability benefits for which:

        i.  the insured is eligible; and

        ii. his spouse, child or children are eligible because of his disability;

    …

(*Id.* at 162–64).

The plan also provides for a cost of living adjustment (COLA) for the monthly benefit. (*Id.* at 167). The plan's language concerning the COLA is as follows:

COST OF LIVING ADJUSTMENT

<u>Eligibilty</u>

An insured will be eligible for cost of living adjustments on the first anniversary of benefit payments and each following anniversary. Adjustments may be made as long as the insured is receiving benefits.

3

Adjustment Amount

The insured's net monthly benefit will increase by 4%.

Each adjustment will be added to the insured's net monthly benefit and will be paid monthly.

Maximum Monthly Benefit

Cost of living adjustment increases are not subject to the maximum monthly benefit.

Net Monthly Benefit

The net monthly benefit means the amount determined by reducing the insured's amount of insurance by other income benefits and any reductions for earnings. The net monthly benefit will be determined each month. For the purpose of calculating adjustments, the net monthly benefit will include any prior cost of living adjustments.

(*Id.*).

**B.    Unum's Calculation of Mr. Romine's Monthly Disability Benefit**

Unum used the following formula to calculate Mr. Romine's total benefit:

> Basic Benefit – Social Security Offset = Net Benefit
> Net Benefit x Applicable COLA Percentage = COLA
> Net Benefit + COLA = Total Benefit

(Doc. 17-5, ¶ 6). Unum used the following table of compounded percentages to determine the "applicable COLA percentage" for each year that Mr. Romine received disability payments:

> Year 1    4.0000%
> Year 2    8.1600%
> Year 3    12.4864%
> Year 4    16.9859%

4

      Year 5      21.6653%
      Year 6      26.5319%
      Year 7      31.5932%
      Year 8      36.8569%
      Year 9      42.3312%
      Year 10    48.0244%
      Year 11    53.9454%
      Year 12    60.1032%
      Year 13    66.5073%
      Year 14    73.1676%
      Year 15    80.0943%

(*Id.* ¶ 7). Unum asserts that it has used this formula and table to calculate Mr. Romine's benefits since the inception of the plan. (*Id.* ¶ 6). Neither the formula nor the table is in the language of the plan.

When Unum began paying Mr. Romine disability benefits in 1996, Mr. Romine was receiving $1,297.00 per month in Social Security Disability Income. (*Id.* ¶ 5). To calculate Mr. Romine's net benefit, Unum subtracted the $1,297.00 social security benefit from Mr. Romine's $5,000.00 monthly benefit.[2] Thus, Mr. Romine received a $3,703.00 disability benefit payment from Unum each month for twelve months.[3] (*Id.*).

At the first anniversary date of the benefits, July 1997, Mr. Romine became eligible for a cost of living adjustment. (*See* Doc. 17-2, p. 167.) To calculate Mr. Romine's total monthly benefit, Unum determined Mr. Romine's "net benefit" by

---

[2] Based on his prior income, Mr. Romine is eligible for the maximum monthly disability benefit of $5,000 per month. (Doc. 16, ¶ 2).

[3] $5,000.00 - $1,297.00 = $3,703.00.

subtracting Mr. Romine's $1,297.00 social security benefit from his $5,000.00 monthly benefit. (Doc. 17-5, ¶ 8). Then, Unum multiplied the difference of $3,703.00 by 1.04. The equation produced a total monthly benefit of $3,851.12 ($3,703.00 x 1.04 = $3,851.12). (*Id.*).

In July 1998, Unum again calculated Mr. Romine's net benefit by subtracting Mr. Romine's $1,297.00 social security benefit from his $5,000.00 monthly benefit. (*Id.* ¶ 9). Unum multiplied the $3,703.00 difference by 1.0816, the compounded COLA for Year 2 under Unum's table of compound percentages. *See supra* pp. 4–5. The equation produced a total monthly benefit of $4,005.16 ($3,703.00 x 1.0816 = $4,005.16). (*Id.*). In July 1999, Unum multiplied Mr. Romine's $3,703.00 net benefit by the Year 3 compounded COLA of 1.124864. The equation produced a total monthly benefit of $4,165.37 (3,703.00 x 1.124864 = $4,165.37). (*Id.* ¶ 10).

In March of 2000, Mr. Romine notified Unum that his Social Security disability benefits had ceased effective January, 1998. (*Id.* ¶ 11). Unum had been subtracting $1,297.00 per month in Social Security Disability Income to calculate Mr. Romine's net monthly benefit since July 1997. Consequently, Unum calculated the resulting underpayment of disability benefits from January 1998 through March 2000 according to its formula, and issued Mr. Romine a check for $37,183.47. (*Id.*). On or about June 17, 2002, Unum discovered that it had

calculated Mr. Romine's monthly benefit incorrectly from March 14, 2000 through June 13, 2002.  (*Id.* ¶ 12).  Unum recalculated the COLA and issued Mr. Romine a check for $5,921.20.  (*Id.*).  From 2002 to 2008, Unum calculated Mr. Romine's net benefit as $5,000.00, and Unum continued to apply compounded cost of living adjustments according to its formula.  (*Id.* ¶ 13).  At the July 2008 anniversary date (Year 12), Unum calculated Mr. Romine's monthly benefit as $8,005.16 ($5,000.00 x 1.601032 = $8,005.16).  (*Id.*).

In August of 2010, Mr. Romine notified Unum that he had been awarded Social Security Disability benefits in the amount of $2,180.00, with a retroactive date of February 1, 2009.  (Doc. 17-2, p. 91).  Unum recalculated Mr. Romine's net benefit by subtracting his $2,180.00 social security benefit from his $5,000.00 monthly benefit ($5,000.00 - $2,180.00 = $2,820.00).  (Doc. 17-5, ¶ 16).  Unum then multiplied the difference of $2,820.00 by 1.731676, the Year 14 compounded COLA.  The equation produced a total monthly benefit of $4,883.33 ($2,820.00 x 1.731676 = $4,883.33), more than $3,000 less than the monthly disability payment that Mr. Romine had been receiving.  (*Id.* ¶¶ 16–17).

Unum notified Mr. Romine that he had incurred an overpayment of $66,297.07 because Unum had not offset Mr. Romine's social security income from his $5,000.00 monthly benefit from February 1, 2009 until August of 2010.  (*Id.* ¶ 18).  This overpayment included an overpayment of $40,184.67 due to the

7

retroactive social security disability offset, and a resulting $26,112.40 COLA overpayment. (*Id.*). On or about March 14, 2011, Mr. Romine paid Unum $39,241.00 toward the $40,184.67 overpayment, and Unum waived the remaining $943.67. (*Id.* ¶ 19). Unum also waived repayment of the COLA portion of the overpayment. *Id.*

On or about December 15, 2010, Mr. Romine notified Unum that he disputed the calculation of the COLA in his ongoing benefit payments, and Unum transferred Mr. Romine's file to its appeals department. (Doc. 17-2, pp. 206–09). On October 13, 2010, Mr. Romine sent a letter to Unum requesting copies of documents relevant to his monthly disability benefit. (*Id.* at 145–46). On October 20, 2010, Unum provided Mr. Romine with copies of the documents he had requested. (*Id.* at 179–81). On January 6, 2011, Unum notified Mr. Romine that Unum upheld its original calculations on appeal. (*Id.* at 229–32).

On February 8, 2011, Mr. Romine filed this action against Unum pursuant to 28 U.S.C. 1132(a)(1)(B). Mr. Romine contends that Unum miscalculated his total monthly benefit after he began receiving Social Security Disability Income in 2009. (Doc. 1, ¶¶ 5–8). After Mr. Romine filed suit, Unum provided Mr. Romine with a copy of its electronic claim file. (Doc. 16, ¶ 31). On August 26, 2011, Unum realized that there was an old paper claim file related to Mr. Romine's claim for disability benefits. (*Id.* ¶ 32). Unum notified Mr. Romine of the existence of

the paper file, and Unum delivered the paper file to Mr. Romine on August 31, 2011. (*Id.* ¶ 33). On October 14, 2011, Mr. Romine filed an amended complaint with an additional cause of action for civil penalties under 29 U.S.C. § 1132(c) based on Unum's alleged failure to respond to Mr. Romine's requests for documents. (Doc. 14, ¶¶ 9–14).

Unum filed a motion for summary judgment on October 14, 2011. (Doc. 15). Mr. Romine moved for summary judgment on November 21, 2011. (Doc. 21). The parties have filed a series of briefs regarding their cross-motions. (Docs. 16, 22, 24, 25). The Court also has before it the summary plan description, the complete administrative record, and mostly unredacted copies of evidence contained in that record. (Doc. 17). On this record, the Court considers the parties' summary judgment motions.

## II.  ANALYSIS

### A.  Mr. Romine's Claim for Disability Benefits

#### 1.  Standard of Review

The Eleventh Circuit has formulated a multi-step framework for courts reviewing an ERISA plan administrator's benefits decisions:

> (1)  Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). All steps of the analysis are "potentially at issue" where a plan vests discretion to the plan administrator to make benefits determinations. *See id.* at 1356 n. 7. Conversely, where a plan does not confer discretion, the court simply applies the *de novo* review standard. *Id.* at 1355.

The parties agree that the policy in question does not grant Unum discretionary authority. (Doc. 16, p. 15; Doc. 25, p. 3). Therefore, the Court's sole task in this case is to review *de novo* Unum's benefits decision and determine whether it is wrong.

## 2. *De Novo* Review of Unum's Monthly Benefit Calculation

Based on its *de novo* review of the language in Unum's policy and the formula that Unum used to calculate Mr. Romine's total monthly benefit, the Court must decide whether the amount of monthly benefits that Unum paid to Mr. Romine is wrong. "Ambiguities in ERISA plans are construed against the drafter of the document, and a claimant's reasonable interpretation is viewed as correct." *White v. Coca-Cola Co.*, 542 F.3d 848, 855 (11th Cir. 2008) (citing *Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1551 (11th Cir. 1994)). The language of the plan in this case is, at worst, ambiguous; at best, the language says exactly what Mr. Romine says it says. Because Mr. Romine presents a reasonable interpretation of the plan, the Court construes the plan against the drafter, Unum, and finds that Unum's monthly benefit calculation based on a formula that appears nowhere in its policy is wrong.

The language at the crux of the parties' dispute appears in the policy's definition of the "net monthly benefit." The policy states, "[f]or the purpose of calculating adjustments, the net monthly benefit will include any prior cost of living adjustments." (Doc. 17-2, p. 167). Unum argues that this language means that prior COLAs are compounded yearly. (Doc. 24, p. 6). Mr. Romine responds that this language means that the dollar amount of prior COLA benefits becomes a

part of the net monthly benefit. (Doc. 25, p. 8). Mr. Romine has the better part of the argument.

The policy states unambiguously that "[a]n insured will be eligible for cost of living adjustments on the first anniversary of benefit payments and each following anniversary." (Doc. 17-2, p. 167). The policy also states that on each anniversary, "the insured's net monthly benefit will increase by 4%. Each adjustment will be added to the insured's net monthly benefit and will be paid monthly." (Doc. 17-2, p. 167). To calculate a net monthly benefit after the first anniversary of benefit payments, the policy provides:

<u>Net Monthly Benefit</u>

The net monthly benefit means the amount determined by reducing the insured's amount of insurance by other income benefits and any reductions for earnings. The net monthly benefit will be determined each month. For the purpose of calculating adjustments, the net monthly benefit will include any prior cost of living adjustments.

(Doc. 17-2, p. 167). The plain language of the Net Monthly Benefit provision combined with the policy's COLA adjustment language produces the following three-step formula for calculating an insured's total monthly benefit at each anniversary of benefit payments:

(1) Basic Benefit – Social Security Benefit [- Earnings][4] +
    Total Dollar Amount of Prior COLAs =
    Net Benefit

---

[4] The parties have not discussed the earnings component of this equation, perhaps because it does not apply to Mr. Romine, but it is a component of the equation nonetheless.

 (2) Net Benefit x 4% = COLA

 (3) Net Benefit + COLA = Total Benefit

By way of illustration, using the formula based upon the plain language of the policy, Mr. Romine's total monthly benefit in August 2010 would be calculated as follows:

 (1) $5,000.00 (Basic Benefit) - $2,180.00 (Social Security) + $3,155.09 (Total Dollar Amount of Prior COLAs)[5] = $5,975.09 (Net Benefit)

 (2) $5,975.09 (Net Benefit) x 4% = $239.00 (COLA)

 (3) $5,975.09 (Net Benefit) + $239.00 (COLA) = $6,214.09 (Total Benefit)

Thus, Mr. Romine's argument—that on each anniversary, Unum should include in the Net Monthly Benefit the total dollar amount of accrued COLAs—is consistent with the plain language of the plan.

Since the inception of the plan, Unum has used a total monthly benefit formula that does not appear in the plan. Unum's formula is as follows:

 (1) Basic Benefit – Social Security Offset = Net Benefit

 (2) Net Benefit x Applicable Compounded COLA Percentage = COLA

 (3) Net Benefit + COLA = Total Benefit

---

[5] *See* Appendix for model calculations of Mr. Romine's interpretation of the plan language, including an explanation of the total dollar amount of prior COLAs in 2010.

(Doc. 17-5, ¶ 6).[6]  Unum argues that by compounding the COLA percentage at each benefit anniversary, it fulfills the policy's requirement that prior cost of living adjustments are included in the net benefit.  (Doc. 16, p. 11).  But the language of the plan does not contain the formula that Unum uses, and the plan does not mention compounded COLA percentages.  While Unum's formula arguably may represent sound accounting principles—principles that generate an equation that is easy to perform, the formula does not square with the plain language of the policy.  Because Unum drafted the policy, it is bound by the plain language.

Unum points to the flawed benefits calculations in Mr. Romine's briefs and argues that Mr. Romine's interpretation of the policy is unreasonable and leads to absurd results.  (Doc. 24, pp. 6–9).  While Mr. Romine's math is flawed (a point that he concedes), as illustrated above, his interpretation of the plan is reasonable and can be reduced to a formula for calculating benefits that does not produce absurd results.  A total benefit of $6,214.09 for 2010 (*see* page 13 *supra*) is not an absurd result, particularly in light of the fact that before Mr. Romine notified

---

[6] For purposes of illustration, using Unum's formula, Mr. Romine's total monthly benefit in August 2010 is calculated as follows:

(1)   $5,000.00 (Basic Benefit) - $2,180.00 (Social Security Benefit) = $2,820.00 (Net Benefit)

(2)   $2,820.00 (Net Benefit) x 73.1676% (compounded COLA percentage) = $2,063.33 (COLA)

(1)   $2,820.00 (Net Benefit) + $2,063.33 (COLA) = $4,883.33 (Total Benefit)

(*See* Doc. 17-5, ¶¶ 15–17).

Unum that he had been awarded Social Security benefits, Unum, using its compounded COLA formula, had calculated Mr. Romine's total monthly benefit as $8,658.38. (Doc. 17-5, ¶ 14). Additionally, applying Mr. Romine's reasonable interpretation of the plan, Unum overpaid Mr. Romine during the years that he did not receive social security benefits, from January 1998 until February 2009. (*See* Doc. 17-5, ¶¶ 11–15).[7] Therefore, this interpretation does not result in a windfall to either party.

The language of the plan can be reasonably interpreted in more than one way, if one assumes that Unum's compounded COLA formula is a reasonable interpretation of the plan. For that reason, the Court finds that Unum's plan is ambiguous and construes that ambiguity in favor of Mr. Romine and against Unum. Consequently, the Court denies Unum's motion for summary judgment. Because Mr. Romine has not presented a correct calculation of benefits, and the Court does not have all of the information necessary to make the calculation accurately, the Court denies Mr. Romine's motion for summary judgment.

### 3. Unum's Recalculation of the COLA in February 2009

Mr. Romine also contends that it was improper for Unum to recalculate the COLA in February of 2009 because under the terms of the plan, COLA recalculations take place only on the anniversary of the first benefit payment,

---

[7] Compare the calculations in Ms. Costello's affidavit (Doc. 17-5) with the calculations in the appendix.

which occurred in July of 1996. (Doc. 22, p. 12). The plan states that "[a]n insured will be eligible for cost of living adjustments on the first anniversary of benefit payments and each following anniversary." (Doc. 17-2, p. 167). However, the plan also states that "[t]he net monthly benefit will be determined each month." (*Id.*).

Contrary to Mr. Romine's assertion, Unum did not recalculate his COLA in February 2009; Unum recalculated his net benefit. When Mr. Romine informed Unum that he was receiving social security benefits with a retroactive date of February 1, 2009, Unum began subtracting Mr. Romine's social security benefit from his basic benefit. (Doc. 17-5, ¶¶ 15–17). This was an adjustment to the net monthly benefit. Therefore, because the plan states that "[t]he net monthly benefit will be determined each month," Unum was allowed to adjust Mr. Romine's net monthly benefit in February of 2009. (Doc. 17-2, p. 167).[8]

## B.   Mr. Romine's Claim for Civil Penalties

ERISA requires a plan administrator to furnish certain documents upon written request from a plan participant. 29 U.S.C. § 1024(b)(4). District courts have discretion to award a statutory penalty if a plan administrator fails to comply with a written request within 30 days. *Id.* at § 1132(c)(1). In determining whether to exercise this discretion, courts consider various factors, including whether the

---

[8] The Court is not saying that Unum calculated Mr. Romine's February 2009 benefits correctly, but just that the plan allows for recalculation of the net monthly benefit on a monthly basis.

plaintiff was prejudiced by the failure to produce the documents and whether the plan administrator acted in bad faith. *Byers v. The Coca-Cola Co.*, 517 F.3d 1256, 1270–71 (11th Cir. 2008). The penalty is designed more for the purpose of punishing the violator than for compensating the participant. *Id.* (citing to *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993)).

Mr. Romine requests civil penalties based on his allegation that Unum failed to produce copies of relevant documents within its possession in response to Mr. Romine's written request for documents. (Doc. 25, p. 10–11). Mr. Romine sent a letter to Unum on October 13, 2010 requesting "copies of certain 'relevant documents'" involving Mr. Romine's disability claim. (Doc. 17-2, p. 145). On October 20, 2010, Unum replied with a letter enclosing a copy of the "long term disability policy, a copy of Mr. Romine's Social Security Notice of Award letter, a copy of the benefit calculation as well as a copy of the original request for overpayment reimbursement." (*Id.* at 179). Mr. Romine sent additional letters to Unum on November 9, 2010 and December 15, 2010. Neither of those letters requested additional documents. (*Id.* at 195, 206–07).

On June 17, 2011, as part of this action, Unum submitted its initial disclosures to Mr. Romine, including its complete electronic file relating to Mr. Romine's claim for benefits. (Doc. 16, p. 21). On August 26, 2011, Unum discovered that there was also a paper claim file which it had not produced. (*Id.* at

17

21–22). Unum notified Mr. Romine the same day, and produced the paper file on August 30, 2011. (*Id.*).

Mr. Romine claims that the paper file is a relevant document under ERISA. (Doc. 14, p. 4). Unum counters that the documents in the paper file are from the early life of the claim and are irrelevant to Unum's current calculation of Mr. Romine's long-term disability benefit. (Doc. 16, p. 22). There is no evidence in the record that Mr. Romine was prejudiced by Unum's delayed disclosure of the paper file. Mr. Romine did not dispute this lack of prejudice in his response to Unum's motion for summary judgment. (Doc. 22). Additionally, there is no evidence that Unum delayed production of the paper file in bad faith. In fact, Unum disclosed the oversight when it was discovered and corrected its mistake within four days. Therefore, the Court denies Mr. Romine's request for civil penalties under 29 U.S.C. § 1029.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Unum's motion for summary judgment (Doc. 15) and **DENIES** Mr. Romine's motion for summary judgment (Doc. 21). The Court **SETS** a status conference for 3:00 p.m. on October 15, 2014.

**DONE** and **ORDERED** this September 30, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE